**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DARRYL CRENSHAW, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:24cv439 (OAW) |
| | : | |
| THE DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
|     Defendants. | : | |

**<u>INITIAL REVIEW ORDER</u>**

Darryl Crenshaw, an inmate housed at Cheshire Correctional Institution ("Cheshire") in the custody of the Connecticut Department of Correction ("DOC"),[1] filed this civil rights complaint under 42 U.S.C. § 1983, asserting violations of his rights under the United States Constitution and federal disability statutes[2] while he was housed at Corrigan-Radgowski Correctional Center ("Corrigan").   ECF No. 1.   He asserts his claims against DOC and the following DOC employees (in their individual and official capacities): Dr. Yesu, Dr. Zuckerbraun, Michelle, Stacy, J. Brennan, Jennifer Sanchez, Colleen Frappier, WL Regan, Robert Richeson, Angel Quiros, and Colleen Gallagher. Plaintiff seeks damages, and declaratory and injunctive relief.

I.   **<u>LEGAL STANDARD</u>**

Pursuant to 28 U.S.C. § 1915A, the court must review prisoners' civil complaints and dismiss any portion that is frivolous or malicious, that fails to state a claim upon which

---

[1] The court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).   A search on the DOC website shows that Plaintiff was sentenced on April 6, 2015, and is now housed at Cheshire. *Department of Correction: Inmate Information*, available at http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=281335 (last visited July 25, 2024).

[2] Plaintiff also asserts state law claims, which the court need not discuss at the initial review phase.

relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.   Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007).   Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."   *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that *"[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"   *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).


II.   **FACTUAL ALLEGATIONS**[3]

For purposes of this initial review, the court considers all of the facts alleged in Plaintiff's complaint to be true.   The court will not exhaustively reproduce all the relevant facts, but simply will summarize them to provide context.

Plaintiff has several mental health conditions for which he repeatedly but unsuccessfully sought treatment while he was housed at Corrigan.   His conditions have manifested in insomnia, inability to eat, night terrors, and paranoia.   He alleges, though, that he did not receive adequate treatment at Corrigan and that his many attempts to use the grievance process to address the deficiency were rejected or ignored.

More specifically, he alleges that he several times complained about "Michelle," a

---

[3] All facts recounted herein are taken from the complaint filed at docket entry 1.

social worker, to Dr. Yesu, the mental health supervisor at Corrigan.[4]   He complained that she was dismissive of him when they first met, that she admitted to receiving several requests from him but did not respond to them, and that she only wanted to justify placing him in solitary confinement (which Plaintiff alleges is the DOC's plan for dealing with him) instead of treating him.   He also asserted that Dr. Yesu's staff (including another staffperson named Stacy and Dr. Yesu himself) provided inadequate mental health services and generally behaved unprofessionally such that he was uncomfortable interacting with them.   These complaints either were rejected for procedural errors or apparently were ignored.

Plaintiff several times tried to address his difficulties through the medical department, but he was referred back to the mental health unit.

On April 26, 2023, Plaintiff submitted a grievance against Brennan, the Health Service Review Coordinator, alleging that Brennan was biased against Plaintiff and rejected several of his grievances[5] for this reason, which rejections in turn aggravated Plaintiff's mental illness.   It also is alleged that Brennan responded to grievances by referring to unrelated maladies.[6]   Frappier rejected the April 26 grievance for procedural errors.   Plaintiff complained about Brennan to Jennifer Sanchez, too, on May 8, 2023, but she did not respond.

Also on May 8, Plaintiff requested his medical records from Regan and informed Dr. Yesu of the mental health staff's failure to respond to his documented issues, including

---

[4]  Plaintiff filed Health Services Administrative Remedies ("HSARs") about Michelle on March 2, 2023; March 12, 2023; and March 31, 2023.
[5]  Brennan rejected HSARs filed on April 22, 2023 and May 5, 2023.
[6]  The court interprets this allegation to assert that Brennan was ignoring portions the grievances Plaintiff submitted.

his insomnia and inability to eat, his migraines, and his night terrors.   He also filed grievances against Brennan and Frappier alleging that their treatment of his prior grievances were violations of his constitutional rights.   These all were rejected or ignored, and though Plaintiff appealed some of them, his appeals were never processed. Frappier also rejected a complaint Plaintiff lodged against Sanchez on June 9, 2023.

On June 1, 2023, Plaintiff grieved that Dr. Zuckerbraun, the psychologist, failed to remedy the many failures already complained of.   On September 5, 2023, he followed up with Dr. Yesu when Dr. Zuckerbraun did not respond.

On June 7, 2023, Frappier approved measures to limit Plaintiff's ability to submit medical grievances.   On June 21, 2023, Plaintiff appealed the denial of a grievance that he was denied help for his mental health issues, but Richeson denied the appeal.

On January 10, 2024, Plaintiff requested to speak with Dr. Yesu about his mental health struggles and the effects of solitary confinement, but Dr. Yesu's responses indicated a lack of concern for Plaintiff.

Based on this history, Plaintiff asserts that Defendants ignored his mental health needs, which he says qualify him as a disabled person.


### III.   **DISCUSSION**

The court construes Plaintiff's complaint to raise the following claims:   indifference to his mental health needs in violation of the Eighth Amendment; violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"); violation of his Fourteenth Amendment rights; First Amendment retaliation; violation of the Protection and Advocacy for Mentally Ill Individuals Act of 1986 ("PAIMI"); unconstitutional

interference with his access to his administrative remedies; and violation of the Connecticut Constitution, Article First.

### A.    ADA/RA

The standards of review under Title II of the ADA and § 504 of the RA "are generally the same," and both statutes apply to state prisons and prisoners.  *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).[7]  To establish a prima facie case under these Acts, a plaintiff must show: "that 1) he is a qualified individual with a disability; 2) [defendants are] entit[ies] subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [defendants'] services, programs, or activities or [defendants] otherwise discriminated against him by reason of his disability."  *Id.*  There are three theories of discrimination that can be used to establish the third prong of an ADA and RA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009).

The court assumes for purposes of initial review that Plaintiff is a qualified individual under the ADA and the RA on the basis of mental health impairments. Nonetheless, the court cannot construe from the allegations of the complaint any ADA or RA violation.

Plaintiff's complaint of disability discrimination arises from the failure to afford him adequate mental health treatment.  Plaintiff has not alleged, however, that he was

---

[7]  The only difference between the ADA and RA is that the RA applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities, a distinction not relevant here. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (finding it proper to consider such claims together).  The "distinctions between the statutes are not implicated in this case," so "'we treat claims under the two statutes identically.'"  *Wright*, 831 F.3d at 72 (quoting *Henrietta D.*, 331 F.3d at 272).

*treated differently* because of his mental health impairment. *See Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010).("Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability.").   Nor has Plaintiff alleged that Defendants have failed to reasonably accommodate his mental health impairment.   *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 277 (2d Cir. 2003) ("[T]he demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation.").   Absent facts to suggest that Plaintiff suffered any discriminatory treatment or could not benefit from DOC services, programs or activities *by reason of* his disability, Plaintiff's complaint does not state a claim under the ADA or the RA.   Such claims must be dismissed as not plausible.

**B.   <u>Section 1983</u>**

Section 1983 of Title 42 of the United States Code "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law."   *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).   "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'"   *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

As an initial matter, any § 1983 claim against the DOC must be dismissed because

a state agency like the DOC is not a person subject to suit under § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The court therefore considers Plaintiff's § 1983 claims only as asserted against the individual defendants for damages.   A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)).   This is true with respect to supervisory officials, as well.   *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (holding that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983, and that "it is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in [their] supervision of the correctional officers or in failing to act on the information [they] had.").

1.   ***Fourteenth Amendment Equal Protection***

Plaintiff asserts violation of his rights under the Fourteenth Amendment Equal Protection Clause.   To state an equal protection claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Diesel v. Town*

*of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).   A plaintiff must demonstrate evidence of "purposeful discrimination directed at an identifiable or suspect class."   *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (internal citation omitted).   Thus, to prevail on an equal protection claim, a plaintiff generally must allege that (1) compared with others similarly situated he or she was treated differently; and (2) that such different treatment was based on impermissible considerations such as race, national origin, religion or some other protected right.   *Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 118 (W.D.N.Y. 2011).   Even when a suspect classification is not at issue, though, the Equal Protection Clause still requires that individuals be treated the same as similarly situated individuals. *Fortress Bible Church v. Feiner,* 694 F.3d 208, 222 (2d Cir. 2012).   Thus, Plaintiff may bring a "class of one" equal protection claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."   *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Sentenced inmates are not members of a protected or suspect class, *Gonzalez v. Hannah*, 2020 WL 3256869, at *8 (D. Conn. June 16, 2020), and Plaintiff has not alleged any facts to suggest that he was treated differently than any other inmate.   Accordingly, Plaintiff's complaint fails to suggest any plausible Fourteenth Amendment equal protection violation.

### 2. *Fourteenth Amendment Due Process Clause*

Plaintiff also claims violation of his rights under the Fourteenth Amendment Due Process Clause.   The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property."   U.S Const. amend. XIV.   While

procedural due process prohibits deprivations of life, liberty or property without constitutionally adequate procedures, substantive due process protects these substantive rights "no matter the process employed by the State." *Case v. Anderson*, No. 16-CV-983 (NSR), 2017 WL 3701863, at *14 (S.D.N.Y. Aug. 25, 2017).

Plaintiff's complaint does not allege any due process deprivation arising from inadequate procedural safeguards.   Thus, the court construes the complaint as asserting substantive due process violations.   But the Supreme Court of the United States has instructed that if "'a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claims.'"   *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of REHNQUIST, C.J.)); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (explaining that "if a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process").

Mr. Crenshaw is a sentenced inmate, and therefore, his claims arise under the Eighth Amendment, not the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (holding deliberate indifference claims of sentenced inmates are cognizable under the Eighth Amendment, while deliberate indifference claims of unsentenced inmates are cognizable under the Fourteenth Amendment).   As the Eighth Amendment provides an explicit textual source of constitutional protection for Mr. Crenshaw's complaints about his medical mistreatment during his confinement as a

sentenced inmate, the court will not consider his claims of deliberate indifference under the substantive due process provision of the Fourteenth Amendment. *Santana v. Quiros*, 2022 WL 16706959, at *10 (D. Conn. Nov. 4, 2022) (collecting cases); *Kaminski v. Oniyuke*, 2019 WL 1877075, at *4 (D. Conn. Apr. 26, 2019) (holding that, on initial screening of the complaint, "if [the plaintiff's] substantive due process claim is based on the same action(s) that gave rise to his Eighth Amendment claim for deliberate indifference to medical needs, then his due process claim will be dismissed").

### 3.    *Eighth Amendment*

The court therefore considers whether Plaintiff has alleged any plausible claims of medical indifference in violation of his Eighth Amendment protection against cruel and unusual punishment.

The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 152, 173, (1976)) (internal citation omitted).   Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.   *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

To state such a claim, a plaintiff must first satisfy an objective requirement by showing the alleged deprivation to be "sufficiently serious."   *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).   That is, the condition must be "one that may produce death, degeneration, or extreme pain."   *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)

(quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).  In instances where "a prisoner receives some care, but allegedly inadequate care," *Hardy v. City of New York*, 732 F. Supp. 2d 112, 128 (E.D.N.Y. 2010), the court's consideration of the seriousness of the plaintiff's condition must "'examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner,'" *Sanders v. Laplante*, No. 3:19-CV-01151 (CSH), 2019 WL 5538118, at *3 (D. Conn. Oct. 25, 2019) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).

Next, a plaintiff must satisfy a subjective element by showing that the defendant was actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct.  *See Salahuddin*, 467 F.3d at 280–81.  The prisoner must allege that a defendant prison official acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness (*i.e.*, reflecting actual awareness of a substantial risk that serious harm to the prisoner would result).  *See Benjamin v. Pillai*, 794 F. App'x 8, 11 (2d Cir. 2019) (explaining that a sentenced prisoner must prove "that the charged official possessed 'a state of mind that is the equivalent of criminal recklessness.'" (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also, e.g.*, *Spavone v. N.Y. State Dept. of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012).  Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference for purposes of a § 1983 claim.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  Nor does a disagreement over the treatment provided show deliberate

indifference.  *Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance*, 143 F.3d at 703).

For purposes of initial review, the court assumes that Plaintiff has sufficiently alleged that he has satisfied the objective element in that he had a serious need for mental health treatment.   Accordingly, the court turns to consideration of the subjective element.

a.   *Dr. Yesu*

Plaintiff alleges that Dr. Yesu (1) failed to ensure that his staff provided Plaintiff with adequate mental health treatment and acted appropriately, (2) was complicit in denying adequate treatment,[8] and (3) provided biased and insensitive responses to Plaintiff's requests.

To the extent Mr. Crenshaw seeks to impose supervisory liability on Dr. Yesu, his claim must fail.   There is no special rule for supervisory liability, so Plaintiff must allege facts showing that Dr. Yesu's own actions violated Plaintiff's constitutional rights. *Tangreti*, 983 F.3d at 619.   In the context of an Eighth Amendment violation, Mr. Crenshaw must allege facts to reflect that Dr. Yesu acted with deliberate indifference, that is, that Dr. Yesu personally knew of and disregarded an excessive risk to Mr. Crenshaw's health or safety.   *Id.*   Moreover, a supervisor's mere knowledge of an issue "does not 'amount[ ] to the supervisor's violating the Constitution.'"   *Id.* at 616–17 (quoting *Iqbal*, 556 U.S. at 677); *see also Lopez v. Capega*, No. 3:24-CV-00225 (SVN), 2024 WL

---

[8] To the extent he asserts a claim of conspiracy between Defendants, Plaintiff cannot allege a plausible conspiracy claim under section 1983 in such conclusory terms.   *See Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) (stating that such a claim must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy."); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" are insufficient.).

2801702, at *5 (D. Conn. May 31, 2024) (noting that a supervisor's failure to remedy a wrong after learning of it is not sufficient to render that supervisor liable under section 1983).

In addition, Plaintiff's conclusory allegations about Dr. Yesu's biased and insensitive responses to his inmate requests do not suggest that Dr. Yesu acted with a state of mind akin to criminal recklessness by disregarding a substantial risk to Plaintiff's mental health.   Likewise, Plaintiff's generalized assertion that Dr. Yesu maintained "outdated policies or discriminatory practices" is not sufficient to impose any Eighth Amendment liability.

However, a supervisor may become liable if he or she instituted the practices with the required culpable mental state.   *See Stone #1 v. Annucci*, No. 20-CV-1326(RA), 2021 WL 4463033, at *8-9 (S.D.N.Y. Sept. 28, 2021); *Harnage v. Dzurenda*, 2022 WL 972438, at *8 (D. Conn. Mar. 31, 2022) (noting liability for a defendant's role in creating or perpetuating an unconstitutional policy is not inconsistent with *Tangreti*... "so long as the defendant's actions – not those of her subordinates – afford a basis.").   The court finds that Plaintiff's allegation that the mental health staff at Corrigan (including Dr. Yesu) had a policy (which the court infers was set by Dr. Yesu) and coordinated plan to keep Plaintiff in solitary confinement rather that give him real mental health treatment sufficiently alleges an Eighth Amendment claim against Dr. Yesu.

Further, the court finds that Plaintiff has stated a conspiracy claim adequately enough to survive initial review.   To state a conspiracy claim under § 1983, Plaintiff must allege facts sufficient to show (1) an agreement between the defendants; (2) to act in concert to deprive him of necessary medical treatment; and (3) an overt act done in

13

furtherance of that goal causing damages.   *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).   While "conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" are insufficient, *id.* at 325, the court finds enough facts stated in the complaint to save this claim from summary dismissal.   With respect to Dr. Yesu particularly, Plaintiff alleges that he specifically asked to speak to Dr. Yesu about the effect of his continued solitary confinement upon his mental health, but Dr. Yesu's response lacked concern or compassion.

Accordingly, Plaintiff has alleged an Eighth Amendment violation against Dr. Yesu plausible enough to survive initial review.

  b. <u>*Dr. Zuckerbraun*</u>

Plaintiff alleges that he was seen by Dr. Zuckerbraun for mental health treatment. Plaintiff claims that Dr. Zuckerbraun's "biased and complicit inaction and or action to fix and or correct 'remedy/resolve' these significant issues that he literally acknowledged in [Plaintiff's] presence, re. both [mental health clinicians and] HSAR coordinator, Brennan." Compl. at ¶ 54.   Plaintiff later states in conclusory terms that "the major factor in his violation[] is neglect and failure to treat Plaintiff[']s severe mental illnesses, and allowing him to decompose and suffer, mental and physical anguish."   *Id.*

Plaintiff has, however, failed to allege any nonconclusory facts to support an Eighth Amendment claim based on Dr. Zuckerbraun's deliberate indifference to his mental health needs.   The court cannot assess from such vague and conclusory allegations what acts Dr. Zuckerbraun committed that amount to his conscious disregard to Plaintiff's serious risk of harm arising from his mental health needs.

Accordingly, Plaintiff's Eighth Amendment claims against Dr. Zuckerbraun must be dismissed as not plausible.

      c.    *Michelle and Stacy*

Plaintiff alleges that Michelle and Stacy are mental health clinicians at Corrigan. He claims Michelle acted dismissively towards him at their first meeting, failed to respond to three inmate requests, and did not properly assess his mental conditions, instead asking him irrelevant questions.  He also alleges that both clinicians participated in a coordinated effort to keep him solitary confinement rather than provide him with necessary mental health treatment.  Finally, Plaintiff also claims that Stacy asked him mental health questions in front of other inmates in violation of his HIPPA rights.

Taking the last allegation first, HIPPA does not create a private right of action and cannot support a claim under section 1983.  *See Rogers v. Rensselaer Cnty. Sheriff's Dep't*, No. 1:14-CV-01162(MAD/TWD), 2015 WL 4404788, at *7 (N.D.N.Y. July 17, 2015) ("It is well established that, because there is no private right of action under HIPAA, a violation of the Act cannot serve as the basis of a § 1983 claim.").  Accordingly, that allegation cannot sustain any claim against Stacy.   Moreover, there are no allegations of conduct by Stacy herself sufficient to carry an Eighth Amendment claim.

However, the court finds that there are sufficient specific allegations against Michelle to sustain an Eighth Amendment claim as to her past initial review.   Plaintiff has alleged that she was aware of his medical needs and rather than address those needs, she denied or failed to respond to his requests for treatment, which the court accepts at this point in litigation as evidence that Michelle understood but deliberately ignored his mental health needs.   Further, the court finds the allegation that she asked specific

questions (such as whether he thought he might hurt himself) designed to keep him in solitary confinement as adequate to sustain a conspiracy claim against Michell..

Accordingly, Plaintiff has alleged a plausible deliberate indifference claim against Michelle, but not Stacy.

###### d.   *Brennan and Frappier*

Plaintiff alleges that Defendants Brennan and Frappier rejected his grievances and thereby denied or delayed his mental health treatment.   "[D]eliberate indifference may be shown where prison officials erect arbitrary and burdensome procedures that 'result in interminable delays and outright denials of medical care to suffering inmates.'" *Barfield v. Semple*, 2019 WL 3680331, at *11 (D. Conn. 2019) (internal quotations omitted).

The court notes that Plaintiff's few descriptions of the reasons given for the rejections of his grievances indicate that these actions were consistent with the requirements of the DOC's Administrative Directives.   *See* A.D. 8.9(6)(b)(ii) ("An inmate must attempt to seek informal resolution prior to filing a request for a Health Services Administrative Remedy."); *id.* at 8.9(c)(6)(iii)(1) ("An inmate may request an administrative reconsideration of a Level 1 disposition by utilizing a CN 8902, Appeal of Health Services Administrative Remedy Form- Level 2, within five (5) calendar days of receipt of the Level 1 decision."). However, for the purposes of initial review, the court finds that the sheer volume of grievances Plaintiff submitted, and these defendant's subsequent barring Plaintiff from filing any additional grievances, is sufficient to allow an inference, at the initial review stage, that he has asserted an Eighth Amendment claim against Brennan and Frappier insofar as they allegedly arbitrarily denied his requests for medical care.

e.     _Sanchez_

Plaintiff alleges that Sanchez, a supervisory nurse, provided no response to either his complaints about her staff member, Brennan, and her treatment of his grievances, or his request for Sanchez to address his grievances and his need for mental health care. He alleges further that Sanchez denied his grievance complaining about "biased rejections of his grievances" seeking mental health care.

Again, Plaintiff has not alleged any facts to support his claim that Sanchez acted arbitrarily or improperly to interfere with his access to mental health treatment. Moreover, Plaintiff's allegations of supervisory nurse Sanchez's denial of a grievance concerning past conduct of her subordinate are not sufficient to support an inference that she was personally involved in deliberate indifference to his mental health needs.   _Brown v. Dep't of Corr._, No. 3:16-CV-00376 (WIG), 2021 WL 124417, at *17 (D. Conn. Jan. 13, 2021) (finding that the allegation that a warden denied a grievance was insufficient to support claim for medical deliberate indifference).   As Plaintiff has not alleged facts to reflect that Defendant Sanchez's own actions violated Eighth Amendment standards, the court will dismiss this Eighth Amendment claims against Sanchez as not plausible.

f.     _Regan_

Plaintiff alleges that Regan is a registered nurse and in charge of the medical records for inmates.   Plaintiff only alleges that he sent Regan inmate requests for his medical records but received no response.   This allegation does not suggest Plaintiff's deprivation of basic human need or exposure to a risk of harm.   Moreover, courts have generally held that prisoners do not have a constitutional right to review or obtain copies of their prison medical records.   _Moore v. Chapedelaine_, No. 3:15-CV-775 VAB, 2015

17

WL 4425799, at *3 (D. Conn. July 17, 2015) (finding that a prisoner's complaint that he was denied access to his prison medical records "cannot amount to a constitutional violation").   Accordingly, Plaintiff's Eighth Amendment claims against Regan must be dismissed as not plausible.

g.     *Dr. Richeson, Quiros and Gallagher*

Plaintiff does not allege any facts to describe conduct by Commissioner Quiros or Supervising Doctor Gallagher; and the only factual allegation about Medical Supervisor Dr. Richeson is that he denied one of Plaintiff's appeals (concerning the treatment of his prior grievances).   Plaintiff has not, however, alleged any conduct by Dr. Richeson to indicate that he was aware that his conduct would expose Plaintiff to a high degree of harm but nevertheless acted with a culpable state of mind akin to criminal recklessness in denying the appeal.   *Camera v. Freston*, No. 3:18CV01595(SALM), 2022 WL 903450, at *18 (D. Conn. Mar. 28, 2022) (noting that an Eighth Amendment allegation must show a defendant acted with "something more than mere negligence, akin to criminal recklessness" despite "actual knowledge" of substantial risk to a plaintiff).

Thus, for reasons previously discussed, Dr. Richeson's denial of Plaintiff's appeal complaining about treatment of his past grievances is not sufficient to support an inference that Dr. Richeson acted with deliberate indifference to Plaintiff's mental health treatment needs. *See Felciano v. Town of E. Hartford*, No. 3:18-CV-1932 (OAW), 2023 WL 4826465, at *8 (D. Conn. July 27, 2023) (stating that allegations about after-the-fact conduct could not support the inference that supervisors had sufficient mens rea and direct involvement to carry a claim of an unconstitutional denial of medical care).

Accordingly, the court must dismiss the Eighth Amendment claims against these

Defendants as not plausible.

### 4. <u>First Amendment Retaliation</u>

Plaintiff claims that Defendants' actions constitute "some form of retaliation, for hi[s] writing clinician up[] for said actions, and several other grievances[.]"   ECF No. 1 ¶ 105.

The elements of a First Amendment retaliation claim are "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against a plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."   *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).   The Second Circuit has "instructed district courts to 'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'"   *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.2003)).   "Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance."   *Baltas v. Maiga*, No. 3:20cv1177 (MPS), 2020 WL 6275224, at *8 (D. Conn. Oct. 26, 2020).

Plaintiff has sufficiently alleged that he engaged in protected conduct by filing a complaint and grievances about staff members.   But to the extent he asserts claims of First Amendment retaliation in this action, Plaintiff has not alleged "specific and detailed factual allegations" to support a claim that he sustained adverse action due to his protected activity.   *Dolan*, 794 F.3d at 295.   Plaintiff does not even describe which

specific defendant took what adverse action against him because of his protected filings. Plaintiff's statement that all Defendants took "some form of retaliation" against him for writing grievances and complaints is wholly conclusory.

Consistent with the Second Circuit's instruction to approach retaliation claims with some measure of skepticism, the court cannot permit Plaintiff to proceed on First Amendment retaliation claims absent specific facts to support a causal connection between his protected conduct and an adverse action.

### 5.    Unconstitutional Interference with Administrative Remedies

Plaintiff claims that the improper treatment of, and restriction on, his ability to file grievances violated his Fourteenth Amendment due process rights.   The Second Circuit has held that neither state directives nor "state statutes . . . create federally protected due process entitlements to specific state-mandated procedures."   *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003).   Thus, allegations that a prison official failed to follow the procedures set forth in a state's administrative remedy program do not state a claim of a violation of an inmate's constitutional rights.   *See Swift v. Tweddell,* 582 F. Supp. 2d 437, 445–46 (W.D.N.Y. 2008) ("It is well established . . . that inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim.").   In addition, "prisoners do not have a due process right to a thorough investigation of grievances." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010); *see also Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) ("Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless.").

Plaintiff may be asserting that the rejections of his grievances and restrictions on his grievance filings deprived him of his rights to court access or to petition the government for redress of grievances under the First Amendment.   The Prison Litigation Reform Act ("PLRA"), 42 U.S. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   Notably, however, the PLRA only requires inmates to exhaust "available" administrative remedies.   Thus, if prison officials improperly rejected or restricted Plaintiff's administrative grievance filings, they would have deprived him of any "available" administrative remedy.   *See Baltas v. Efre*, 3:19-cv-1820 (MPS), 2020 WL 1915017 at *33 (D. Conn. April 20, 2020).   And, if he is lacking an available administrative remedy to exhaust, Plaintiff is still free to pursue claims in federal court (as he clearly is doing).   *Id.*   Thus, Plaintiff has not alleged plausible claims of Fourteenth or First Amendment violation arising from the treatment of, or restrictions on, his administrative remedies.

**C.    PAIMI**

Plaintiff claims violation of the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Program, 42 U.S.C. §§ 10801 – 10805.[9]   But the Supreme Court of the United States has held that no basis for a private lawsuit exists, "whether under 1983 or under an implied right of action," unless the "text and structure of a [federal] statute

---

[9]  PAIMI requires each state, as a condition of receiving certain federal funding, to establish a government agency or private organization to protect and advocate for the rights of individuals with mental illness.   42 U.S.C. §§ 10802, 10803.   Under PAIMI, qualifying protection and advocacy agencies/organizations have statutory authority to "pursue administrative, legal and other appropriate remedies to ensure the protection of individuals with mental illness...."   *Id.* at § 10805(a)(1)(B).

provide[s] ... [an] indication that Congress intend[ed] to create new individual rights."
*Gonzaga University v. Doe,* 536 U.S. 273, 286 (2002).   And courts have uniformly held
that the provisions of PAIMI do not provide a private right of action to an individual to
enforce the requirements regarding the protection of individuals with mental illness.   *See*
*Lawson v. Nat'l Church Residencies,* Case No. 5:15-cv-332-MW-GRJ, 2016 WL
2643155, at *2 (N.D. Fla. Apr. 6, 2016) ("PAIMI does not create an enforceable private
right of action."), *report and recommendation accepted and adopted,* Case No.
5:15cv332-MW/GRJ, 2016 WL 3566856, at *1 (N.D. Fla. June 27, 2016); *Darnell v. Jones,*
No. CIV-12-1065-M, 2014 WL 4792144, at *3 n.4 (W.D. Okla. Sept. 24, 2014) ("PAIMI
Act authorizes certain protection and advocacy systems to bring suit regarding access to
patient records; its provisions do not provide a private cause of action to" plaintiff who is
an inmate) (citations omitted), *aff'd,* 610 Fed. App'x. 720 (10th Cir. 2015); *Romeo v. Aid*
*to Developmentally Disabled, Inc.*, No. 11-CV-6340(JS)(GRB), 2013 WL 5532649, at *2
(E.D.N.Y. Oct. 3, 2013) (granting motion to dismiss on ground that the individual
defendants were "not state actors" for purposes of 42 U.S.C. §§ 1983, 1985, 1986 and
"that PAIMI create[d] no privately enforceable federal rights"); *Burke v. North Dakota Dep't*
*Corr. & Rehab.*, No. 1:07-cv-4, 2007 WL 1456217, at *8 (D.N.D. May 16, 2007) (language
of PAIMI "reveals no intent on the part of Congress to provide private remedy to review
individual decisions of the protection and advocacy organizations regarding whether to
provide services to particular individuals").   Accordingly, Plaintiff's claims under PAIMI
are dismissed.

      **D.**    <u>**Official Capacity Claims**</u>

      Plaintiff's complaint indicates he asserts his claims for unspecified injunctive and

declaratory relief against Defendants in their official capacities.

A plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)).   Further, a claim for injunctive relief can only proceed against defendants who "plausibly have the authority to grant the prospective relief." *See Smith v. Perez*, No. 19-CV-1758, 2020 WL 2307643, at *6 (D. Conn. May 8, 2020). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer*, 511 U.S. at 846–47).

To the extent Plaintiff asserts official capacity claims for monetary damages against Defendants (who all are state employees), such claims are dismissed as barred by the Eleventh Amendment.   *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Further, Plaintiff may not proceed in this action on his official capacity claims against the DOC employees who work at Corrigan because he is now housed at Cheshire Correctional Center, and therefore, his requests for official capacity relief against these Defendants are moot.   *See Salahuddin*, 467 F.3d at 272 (noting that an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility).   Accordingly, Plaintiff's original complaint does not allege any plausible official capacity claims for injunctive or declaratory relief.

However, the court is in receipt of an emergency motion for a preliminary injunction that Plaintiff filed on July 23, 2024.   *See* ECF No. 9.   In that motion, Plaintiff states that

his mental health conditions render him an unsafe cellmate and while he has had single cell status, it appears DOC is contemplating assigning him a new cellmate, and he seeks the court's intervention to prevent such action.   Notably, this motion deals with Plaintiff's current housing situation at Cheshire Correctional Center, not Corrigan, and so the relief sought in the motion cannot be granted pursuant to the original complaint in this action. But Plaintiff states that he intends to file another complaint dealing with the actions and omissions of Cheshire staff.   Therefore, in the interest of judicial efficiency, the court hereby instructs the plaintiff to refrain from filing a separate action, and instead to file one, single amended complaint in this action that states all claims against the staff at Cheshire as well as the staff at Corrigan.   Further, given the gravity of the circumstances, the court also informs the defendants that they will be instructed to submit a response to the emergency motion shortly after the amended complaint is filed, with little possibility of any extensions of time.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the court will allow this case to proceed on Plaintiff's individual capacity claims for damages against Dr. Yesu, Michelle, Brennan, and Frappier for the alleged violations of Plaintiff's Eighth Amendment rights.

All other claims, including official capacity claims, are DISMISSED.   Defendants DOC, Dr. Zuckerbraun, Stacy, Jenifer Sanchez, WL Regan, Robert Richeson, Angel Quiros, and Colleen Gallagher are DISMISSED from this action.

Plaintiff is instructed to file, on or before **August 29, 2024, one amended complaint** that encompasses <u>all</u> of his allegations against the staff at Corrigan <u>and</u>

Cheshire.   This may include revising his allegations against the staff at Corrigan.   The amended complaint will completely replace the complaint, and the court will not consider any allegations made in the original complaint in evaluating any amended complaint. Thus, Plaintiff must reassert all factual allegations, all claims, and all defendants.

If the court receives no amended complaint from Plaintiff by August 29, 2024, the court will presume that Plaintiff wishes to proceed as to the claims permitted to go forward in this order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner thereafter.   The court further will summarily deny the pending motion for preliminary injunction.

**IT IS SO ORDERED** at Hartford, Connecticut, this 1st day of August, 2024.


_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE