UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------- x
DARRYL CRENSHAW,                             :
                                             :
                        Plaintiff,           :
                                             :
        v.                                   :        24-CV-439 (SFR)
                                             :
DEPARTMENT OF CORRECTIONS et al,             :
                                             :
                        Defendants.          :
------------------------------------------------------------- x
```

**RULING ON MOTION TO DISMISS**

Plaintiff Darryl Crenshaw, an individual serving a sentence in the custody of the Connecticut Department of Correction ("DOC"), brings a civil rights action *pro se* under 42 U.S.C. § 1983 asserting equal protection and Eighth Amendment violations under the United States Constitution. Crenshaw also brings claims of disability discrimination under the Americans with Disability Act and Rehabilitation Act. Defendants move to dismiss all claims. For the following reasons, I grant the motion to dismiss in part and deny it in part.

I.    **BACKGROUND**

A.    **Procedural History**

Crenshaw commenced this action by filing his original complaint on March 25, 2024, while housed at Cheshire Correctional Institution ("Cheshire C.I."). Compl., ECF No. 1. He paid the Court's filing fee on April 8, 2024. His complaint related to actions of DOC staff while he was housed at Cheshire C.I. and Corrigan-Radgowski Correctional Center ("CRCC").

On July 23, 2024, Crenshaw filed an emergency motion for preliminary injunction concerning his conditions while housed at Cheshire C.I. Mot. for Prelim. Inj., ECF No. 9. The

Court denied the motion as moot after Crenshaw transferred to MacDougall-Walker

Correctional Institution ("MWCI"). *See* ECF No. 33.[1]

On August 1, 2024, the Court conducted an initial review of Crenshaw's Complaint.

Initial Rev. Order ("IRO"), ECF No. 10. In it, the Court permitted Crenshaw to proceed on his

claims of Eighth Amendment deliberate indifference to his mental health needs against Dr.

Yesu, Michelle, Brennan and Frappier in their individual capacities, and it dismissed as not

plausible his claims of Fourteenth Amendment equal protection and due process violations,

First Amendment retaliation, unconstitutional grievance interference, ADA and RA violations,

Protection and Advocacy for Individuals with Mental Illness ("PAIMI") violation, and all

---

[1] The Honorable Omar A. Williams, United States District Judge, presided over this action until it
was transferred to me on January 6, 2025. ECF No. 38. The Court stated the following in denying
Crenshaw's Motion for a Preliminary Injunction on November 27, 2024:

> Given that Plaintiff has been transferred to a different facility, at which he has
> been given single-cell status (and the written assurance that he will so remain
> while housed at that facility, see ECF No. 27-4), the court agrees with
> Defendants that Plaintiff's motion for a preliminary injunction has been mooted.
> Plaintiff still may seek permanent injunctive relief via his Americans with
> Disabilities Act and Rehabilitation Act claims, but the court denies preliminary
> injunctive relief, for while the Department of Correction ("DOC") conceivably
> could order Plaintiff's transfer at any time (upon which Mr. Crenshaw "most
> likely [would] have to go through this process again," *id.*, in seeking single-cell
> status), review of the supplied medical records, together with the apparent
> likelihood that DOC would conduct another assessment before denying Mr.
> Crenshaw single-cell status at another facility (particularly in light of the safety
> concerns raised herein), the high standard required to support a preliminary
> injunction is not now met. As Defendants note, holding otherwise could serve
> to encourage other inmates to demand single-cell status through their own
> threats of violence toward others. Defendants' motion to seal certain exhibits
> (submitted in support of their response to the preliminary injunction motion) is
> granted. The documents filed at docket entry 28 shall remain under seal until
> further order of the court.

ECF No. 33.

official capacity claims against Defendants who were employed at CRCC. *Id*. Crenshaw was

instructed to file an amended complaint that encompassed all of his allegations against staff at

CRCC and Cheshire C.I. *Id*. at 24.

Crenshaw filed an 82-page Amended Complaint (and 516 pages of exhibits) on August

20, 2024. Am. Compl., ECF No. 11. On August 23, 2024, the Court issued a Second IRO

stating as follows:

> The court thanks Plaintiff for the timely submission of his amended complaint.
> Therein, he has corrected some, but not all of the deficiencies identified in the
> courts previous initial review order. See ECF No. 10. Accordingly, the court
> still will permit the Eighth Amendment claims (under a conspiracy theory and
> a deliberate indifference theory) for damages to proceed against Defendants Dr.
> Yesu, Michelle, J. Brennan, and Colleen Frappier in their individual capacities.
> In addition, the court will allow the same claims to proceed against Defendants
> Dr. Zuckerbraun (under both theories) and Kelly Wolf (under a deliberate
> indifference theory only). The court also will allow to proceed claims under the
> Americans with Disabilities Act and the Rehabilitation Act against the DOC.
> Finally, the court also will allow to proceed, for further development, a class of
> one claim of violation of Plaintiff's right to equal protection under the
> Fourteenth Amendment based upon the alleged different treatment of Plaintiff
> compared to others, less severely disabled individuals.
>
> To the extent Plaintiff attempts to state a claim for deprivation of access to
> courts, a violation of the First Amendment, a violation of DOC regulation,
> international law, or PAIMI, the court finds that such claims are not pleaded
> adequately enough to survive initial review and therefore must be dismissed.
> Defendants Stacy, Jennifer Sanchez, Angel Quiros, WL Regan, Colleen
> Gallagher, Natalina, and Reis hereby are dismissed from this action.

ECF No. 12. The Court later denied Defendants' Motion for More Definite Statement on the

grounds that "the amended complaint is more than adequate to apprise Defendants of the

claims against them, particularly where the court already has clarified the facts of the case and

the claims that will proceed past initial review." ECF No. 33.

Defendants moved to dismiss the Amended Complaint on January 10, 2025. Mot. to

Dismiss, ECF No. 39; Mem. of L. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem."), ECF

No. 39-1. Crenshaw timely responded in opposition on March 13, 2025. Pl.'s Mem. of L. in Opp. to Defs.' Mot. to Dismiss ("Pl.'s Mem."), ECF No. 43.

### B.    Factual Allegations

The following well-pleaded facts from the Amended Complaint are accepted as true for purposes of this motion. Crenshaw's claims arise from his time at CRCC and Cheshire C.I. Am. Compl. ¶¶ 106, 161. Defendants Brennan and Frappier are part of the medical staff at CRCC. *Id.* ¶¶ 227, 229. Defendants Michelle and Dr. Yesu are mental health providers at CRCC, *id.* ¶¶ 223, 225, while Dr. Zuckerbraun is the Regional Psychology Supervisor who oversees mental health services at CRCC, *id.* ¶ 224. Dr. Wolf is the mental health supervisor at Cheshire C.I. *Id.* ¶¶ 164, 232.

The Amended Complaint states that Crenshaw is disabled as demonstrated by mental health diagnoses rendered from 1993 through 2009. *Id.* ¶¶ 47-72. The Amended Complaint submits that Crenshaw has been "treated differently than inmates with less significant mental health issues, mental health needs and mental health histories." *Id.* ¶ 10. Because of his mental health conditions, Crenshaw interacts with mental health professionals only as the result of third-party referrals or "calls from concerned correctional officers;" the mental health professionals who respond arrive "outwardly verbally upset and agitated" and "as if they came in the middle of dinner or they were sleeping." *Id.* ¶ 12. The Amended Complaint maintains that "inmates with less significant mental health problems are called to the clinicians' offices for more intimate therapy not subject to the judgement of the entire unit." *Id.* ¶ 13. Due to the lack of a proper assessment, orientation or diagnosis, Crenshaw has not received necessary "modifications and reasonable accommodations for his equal rights." *Id.* ¶ 42.

On March 2, 2023, Defendant Michelle responded to Crenshaw's housing unit after a correctional officer related that Crenshaw was experiencing auditory hallucinations. *Id.* ¶ 98. Crenshaw expressed to Michelle that he may be schizophrenic, but Michelle purposefully omitted this statement from the report she prepared of the incident in order to "negatively" affect consideration of Crenshaw's psychological history. *Id.* ¶¶ 106-07.

Crenshaw submitted grievances to Dr. Yesu and Dr. Zuckerbraun requesting that Stacy, Crenshaw's assigned clinician (who is not named as a party to this action), be reassigned because he had heard negative reports about Stacy from other individuals under her care. *Id.* ¶¶ 108-10. Crenshaw's concerns were not addressed. *Id.* ¶¶ 113, 115-18.

Dr. Zuckerbraun met with Crenshaw to hear his concerns but opted not to launch an "investigation" into his allegations and did not respond further to his written requests. *Id.* ¶¶ 117, 133, 145. Specifically, Crenshaw expressed his concerns about his mental health status and need for a "compromisable clinician," among "numerous allegations outlined in his multiple [medical grievances], and the regular ignoring of his [inmate requests] by Mental Health." *Id.* ¶ 115. Crenshaw expected his grievances would be "investigated" by Dr. Zuckerbraun who was in charge of the individuals whom Crenshaw "accus[ed] of wrongdoing." *Id.* Dr. Zuckerbraun indicated she would look into Crenshaw's complaints but no investigation was conducted and the individuals Crenshaw accused of wrongdoing were not questioned. *Id.* ¶¶ 116-17. Crenshaw's request for a new clinician was ignored. *Id.* ¶ 117.

Crenshaw also met with Dr. Yesu shortly after his meeting with Dr. Zuckerbraun. *Id.* ¶ 118. During that meeting, Crenshaw read a portion of Dr. Zuckerbraun's note describing her recent meeting with him. *Id.* Dr. Zuckerbraun's note stated that Crenshaw asked for Stacy to be reassigned because Crenshaw "witnessed [Stacy] raise her voice at another inmate," which

"significantly downplay[ed] the interaction." *Id.* Dr. Yesu also failed to address Crenshaw's concerns or conduct an investigation and cited a "policy based decision" as the reason for not changing Crenshaw's assigned clinician. *Id.* ¶ 125. After Crenshaw requested a copy of the alleged policy, Dr. Yesu "changed his position," *id.* ¶ 125, and clarified that there was no policy regarding clinician assignments, ECF No. 11-1, at 333.

Brennan and Frappier "ignored" Crenshaw's complaints or "manipulat[ed] . . . the grievance process" by rejecting his administrative remedy requests for his failure to comply with Administrative Directive No. 8.9 or for not pursuing a "grievable matter." Am. Compl. ¶¶ 102, 111, 113, 124, 131, 134-35, 140, 144.

After his transfer to Cheshire C.I. in January 2024, Crenshaw submitted several requests related to his mental health and his need for "single-cell" status, but these requests went unanswered, were rejected, or their responses were "manipulated" by staff at Cheshire C.I., including Dr. Wolf. *Id.* ¶¶ 161-63, 165-71, 173-78. The Amended Complaint avers that Dr. Wolf provided a "doctored response" indicating falsely that Crenshaw had refused services when she attempted to conduct his mental health evaluation. *Id.* ¶ 178.

Dr. Wolf provided Crenshaw with a mental health evaluation of "approximately 11 minutes" in length on June 25, 2024. *Id*. ¶ 187. Dr. Wolf did not accept Crenshaw's invitation to review his prior mental health records; instead, she told him that his "past history and diagnoses were not relevant to his current mental health status [and] that her only concern was to address current issues." *Id.* Dr. Wolf diagnosed Crenshaw with depression and "raised his mental health score to a 3." *Id.* ¶ 188. Crenshaw has not seen Dr. Wolf since that evaluation. *Id.* On June 28, 2024, Crenshaw was advised by the ADA Coordinator that his request for single cell status would be denied due to the lack of diagnostic proof. *Id.* ¶ 189.

On August 12, 2024, Crenshaw was placed in solitary confinement. *Id.* ¶ 190. Although Dr. Wolf came into the unit in August 2024 where Crenshaw was housed, she ignored efforts by Crenshaw and three other inmates to gain her attention; this led the other inmates to bang their heads on the door and threaten to harm themselves. *Id.* ¶¶ 191-96. Dr. Wolf displayed a "blatant lack of empathy" and lack of "will to offer preventative treatment . . . in the form of brief conversation." *Id.* ¶ 197.

During his solitary confinement, Crenshaw experienced severe periods of insomnia, migraines, inability to eat, and vomiting, and "compulsive subconscious scratching . . . during incidents of night terrors." *Id.* ¶¶ 201, 203-04. These conditions made it impossible for Crenshaw to live with a cellmate. *Id.* ¶ 205.

Crenshaw was transferred to MWCI in September 2024. ECF No. 15. DOC has committed to grant Crenshaw single-cell status for the duration of time he remains at MWCI. ECF No. 27-4, at 2.

## II.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. I must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104

(2d Cir. 2011). However, I am not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

Throughout, I am mindful of my obligation to give "special solicitude" to litigants who proceed without the assistance of an attorney. *Rosa v. Doe*, 86 F.4th 1001, 1007 (2d Cir. 2023). I must construe *pro se* pleadings liberally "to raise the strongest arguments that they suggest," *Triestman v. Federal Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006), and afford lenience in applying procedural rules, *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

## III.  DISCUSSION

The Amended Complaint seeks damages on four grounds: (1) an equal protection class-of-one claim, (2) an Americans with Disabilities Act and Rehabilitation Act claim, (3) a conspiracy to violate civil rights in violation of 42 U.S.C. § 1983, and (4) deliberate medical indifference in violation of the Eighth Amendment. Defendants contend that the Amended Complaint should be dismissed in full for failure to state a claim. For the reasons explained below, I agree that the equal protection, ADA/RA claim, and conspiracy counts fail to state a claim, but I find that the Amended Complaint adequately pleads that certain Defendants were deliberately indifferent to Crenshaw's need for mental health treatment.

### A.    Fourteenth Amendment Equal Protection

The Court permitted Crenshaw to proceed on a claim that Defendants violated his right to equal protection. ECF No. 12. The Amended Complaint submits that Crenshaw was treated differently from inmates with "less significant mental health issues, mental health needs, and mental health histories" because these inmates are not treated with "disdain," have an "easier time" in obtaining mental health treatment, and are able to obtain therapy in a more private setting rather than in a cell in front of other prisoners in the unit. Am. Compl. ¶¶ 10-13.

To state an equal protection claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citation and internal quotation marks omitted). A plaintiff must demonstrate evidence of "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citation omitted). Crenshaw asserts mistreatment based on his status as an incarcerated person with severe mental illnesses. But disability is not a protected class under the Equal Protection Clause. *See Horelick v. Lamont*, No. 3:21-CV-1431 (MPS), 2023 WL 5802727, at *7 (D. Conn. Sept. 7, 2023). Nor are people serving sentences of incarceration members of a protected or suspect class. *Gonzalez v. Hannah*, No. 3:19-cv-1522 (VLB), 2020 WL 3256869, at *8 (D. Conn. June 16, 2020).

When a suspect classification is not at issue, the Equal Protection Clause provides a remedy to plaintiffs who seek to recover because they were "intentionally treated differently from others similarly situated." *Fortress Bible Church v. Feiner,* 694 F.3d 208, 222 (2d Cir. 2012). Thus, Crenshaw may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the

plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at \*5 (S.D.N.Y. Mar. 27, 2015) (citation and internal quotation marks omitted) *aff'd*, 639 F. App'x 44 (2d Cir. 2016). A plaintiff must show that there was "no rational relationship between the disparity of treatment and some legitimate governmental purpose." *Johnson v. Comm'n on Hum. Rts. & Opps.*, No. 3:24-CV-728 (KAD), 2025 WL 1233960, at \*9 (D. Conn. Apr. 29, 2025).

The Court identified the deficiencies in Crenshaw's class-of-one claim when it conducted its initial review of the original complaint. IRO 8. Defendants contend that the Amended Complaint fails to plead any facts demonstrating Crenshaw was treated differently from any highly similar comparator. Defs.' Mem. 9-12. Crenshaw concedes that he has not identified any comparators for the class-of-one analysis, but submits that he should be entitled to discovery to prove this claim. Pl.'s Mem. 6. Courts in the Second Circuit routinely dismiss class-of-one equal protection claims where a plaintiff is unable to identify in their pleadings a similarly-situated comparator. *See, e.g., Johnson v. Cook*, No. 3:19-CV-1464 (CSH), 2021 WL 2741723, at \*19-20 (D. Conn. July 1, 2021) (dismissing class-of-one equal protection claim where plaintiff had not alleged facts to suggest that Defendants "treated her differently than similarly situated inmates seeking authorization to undergo medical procedures"); *Shtilman v. Makram*, No. 14-CV-6589 (NSR), 2018 WL 3745670, at \*8 (dismissing equal protection claim because plaintiff identified no comparators or other inmates similarly situated who received medical treatment denied to plaintiff); *Vaher v. Town of Orangetown,* 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (dismissing equal protection claim where the amended complaint was

"completely devoid of any reference to 'similarly situated' or 'substantially similar' individuals").

Although the Court declined to dismiss the class-of-one claim in its second IRO, ECF No. 12, the IRO does not preclude me from considering, with the "benefit of adversarial presentation," whether a complaint states a claim. *See Smalls v. Wright*, No. 3:16-CV-2089 (JCH), 2017 WL 3474070, at *4 (D. Conn. Aug. 11, 2017) (citation omitted); *Allah v. Semple*, No. 3:18-CV-887 (KAD), 2019 WL 109002, at *5 (D. Conn. Jan. 4, 2019). After considering Defendants' briefing and Crenshaw's response, I agree the Amended Complaint fails to state a plausible class-of-one equal protection claim. I therefore grant Defendants' motion to dismiss the equal protection claim.

### B.    Americans with Disabilities Act and Rehabilitation Act Claims

After noting the deficiencies with Crenshaw's claims under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("RA") in the first complaint, *see* IRO 4-6, the Court permitted Crenshaw's Amended Complaint to proceed on this claim against the DOC. Defendants contend that Crenshaw has still not stated a plausible ADA or RA claim. Defs.' Mem. 13-18.

The standards under Title II of the ADA and § 504 of the RA "are generally the same," and both apply to state prisons and prisoners. *Wright v. New York State Dep't of Corr.*, 831

F.3d 64, 72 (2d Cir. 2016).[2] To establish a prima facie violation under Title II of the ADA or the RA, Crenshaw must show that: (1) he is a qualified individual with a disability, (2) Defendants are subject to the ADA and RA, and (3) Crenshaw was denied the opportunity "to participate in or benefit from [Defendants'] services, programs, or activities or [Defendants] otherwise discriminated against him by reason of his disability." *Wright*, 831 F.3d at 72. There are "three available theories" of discrimination that can be used to establish the third prong of an ADA and RA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009) (citation and internal quotation marks omitted); *accord Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021).

The Amended Complaint contends that Crenshaw was denied "mandatory contemporary standards of medical/mental health care" he required as an incarcerated person with disabilities. Am. Compl. ¶ 209. The Amended Complaint maintains that Crenshaw was denied "public services, programs and activities, most notably, the service of being able to participate in Mental Health Services as was not afforded to all inmates equally"—which deprived him of the "major life activity of being able to sleep." *Id.* ¶ 217. The Amended Complaint asserts that Defendants provided Crenshaw with inferior care because his mental illness makes him harder to treat than other individuals with less severe forms of mental illness.

---

[2] The only difference between the ADA and RA is that the RA applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities, a distinction not relevant here. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 n.13 (D. Conn. 2008); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (finding it proper to consider such claims together). The "distinctions between the statutes are not implicated in this case," so "'we treat claims under the two statutes identically.'" *Wright*, 831 F.3d at 72 (quoting *Henrietta D.*, 331 F.3d at 272).

*See, e.g.*, *id.* ¶¶ 10-11 (describing different care afforded to individuals with "less significant mental health issues and or histories"), *id.* ¶ 15 (positing that Defendants avoid the "trouble of dealing with inmates with significant mental health problems"), *id.* ¶ 44 (stating that DOC "opts not to recognize certain inmates' mental health issues . . . so as not to honor the . . . accommodations required by law"). Finally, the Amended Complaint asserts that Crenshaw's providers have discriminated against him by failing to take into account his history of mental illness in assessing his mental health needs. *Id.* ¶ 73.

I assume for the purposes of deciding this Motion that Crenshaw's mental illnesses are sufficient to make him a qualified individual under the ADA and RA and that Defendants are subject to the provisions of the ADA and RA. Nonetheless, I find that the Amended Complaint fails to state an ADA or RA claim.

The Second Circuit has held that failure to "provide custodial medical services" in a "timely and adequate manner" does not "by itself, constitute[] a failure to make a reasonable accommodation by reason of an individual's disability under the ADA." *Tardif*, 991 F.3d at 404 (internal quotation marks omitted). "Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010); *Tardif*, 991 F.3d at 405 ("[H]er claim relates solely to whether she received adequate medical treatment in police custody for her disability, and such a claim is not cognizable under the ADA."); *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) (holding that there is no ADA claim where "plaintiff is in essence challenging the adequacy of his [mental health] services, not illegal disability discrimination"); *Maccharulo v. New York State Dep't of Corr. Servs.*, No. 08CIV301LTS, 2010 WL 2899751, at *4 (S.D.N.Y.

July 21, 2010) ("Plaintiffs' complaint thus is a challenge to the adequacy and the nature of the mental health services Decedent was receiving rather than a claim that Decedent was wrongfully denied a public service. A challenge to the adequacy of services provided, as opposed to a challenge alleging denial of services provided to non-disabled persons, is not a valid claim under the ADA or the Rehabilitation Act."). Accordingly, where ADA or RA claims "all revolve around the provision of inadequate care because of Defendants' indifference," they should be dismissed for failure to state a claim. *Freudenberg v. Cnty. of Orange*, No. 23-CV-847 (KMK), 2024 WL 4307176, at *8 (S.D.N.Y. Sept. 25, 2024).

Here, the Amended Complaint complains about the quality of Crenshaw's mental health treatment and the ways in which the treatment provided to Crenshaw differed from the treatment provided to others with mental illness. In *Tardif*, the Second Circuit explained:

> [I]n *United States v. University Hospital*, we noted that "where medical treatment is at issue, it is typically the [disability] itself that gives rise to, or at least contributes to, the need for services" and thus held that Section 504 of the Rehabilitation Act "prohibits discrimination against a [disabled] individual only where the individual's [disability] is unrelated to, and thus improper for consideration of, the services in question." 729 F.2d 144, 156 (2d Cir. 1984). Moreover, in *Cushing v. Moore*, we held that the Rehabilitation Act "does not create a cause of action based on a [disability] that is directly related to providing the very services at issue." 970 F.2d 1103, 1109 (2d Cir. 1992) . . . .

*Tardif*, 991 F.3d at 405-06 (footnote omitted).

Crenshaw alleges his disability is mental illness. The Amended Complaint does not allege that Crenshaw was denied the opportunity to participate in services or benefits available to individuals without disabilities. Rather, the "service" at issue is mental health treatment for Crenshaw's mental illness. Accordingly, Crenshaw's disability is directly related to the service at issue. *See Tardif*, 991 F.3d at 405-06. Under these circumstances, I conclude that the Second Circuit's holdings preclude relief for an ADA or RA claim. I therefore dismiss Crenshaw's

claims arising under the ADA and RA for failure to state a claim.[3]

### C.    Eighth Amendment Claims

#### 1.    Eighth Amendment Conspiracy

After initial review, the Court permitted Crenshaw to proceed to service on his claim of a conspiracy to violate his Eighth Amendment rights against Defendants Dr. Yesu, Dr. Zuckerbraun, Michelle, J. Brennan, and Frappier in their individual capacities. ECF No. 12. The Amended Complaint contends that Defendants conspired to violate Crenshaw's Eighth Amendment right to adequate mental health treatment in an effort to diminish their own workload. Am. Compl. ¶¶ 10, 15. Defendants argue that Crenshaw has not pleaded a plausible conspiracy claim. Defs.' Mem. 21-22.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *DiBenedetto v. Coley*, No. 24-1029-CV, 2024 WL 4662979, at *2 (2d Cir. Nov. 4, 2024) (summary order) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). A plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (citations and internal quotation marks omitted). "It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Brook v. Ruotolo*, No. 23-1339, 2024 WL 3912831, at *3 (2d Cir. Aug. 23, 2024)

---

[3] As I find that Crenshaw fails to state a claim, I need not address Defendants' argument in the alternative that the Eleventh Amendment bars these claims. Defs.' Mem. 18-21.

(summary order) (quoting *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)); *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) (plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy").

The Amended Complaint fails to state any non-conclusory facts to suggest that Defendants entered into an agreement of any kind to violate Crenshaw's Eighth Amendment rights. And I am not required to credit Crenshaw's conclusory statements of Defendants' general policy of avoiding care obligations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007). The well-pleaded facts in the Amended Complaint do not support the inference that Defendants formed any conspiracy to violate Crenshaw's rights. Nor does the Amended Complaint detail any "meeting of the minds" among Defendants. *Webb*, 340 F.3d at 110. I therefore dismiss the Eighth Amendment conspiracy claim as not plausible.[4]

### 2.    Deliberate Medical Indifference

On its initial review of the original complaint, the Court permitted Crenshaw to proceed to service on his claim that Dr. Yesu, Michelle, Brennan, and Frappier violated his Eighth Amendment rights. IRO 24. After Crenshaw filed an Amended Complaint, the Court allowed Crenshaw to bring this claim against Dr. Wolf and Dr. Zuckerbraun as well. ECF No. 12.

---

[4] As I find that the conspiracy claim is not plausible, I have no occasion to consider whether the intracorporate conspiracy doctrine presents an independent bar to Crenshaw's conspiracy claim under 42 U.S.C. § 1983. *See Baltas v. Dones*, No. 3:22-CV-38 (MPS), 2022 WL 1239989, at *8 (D. Conn. Apr. 27, 2022); *Domroes v. White*, No. 1:23-CV-41, 2023 WL 7712011, at *14 (W.D.N.Y. Nov. 15, 2023) (noting that, while the Second Circuit has not applied this doctrine to bar conspiracy claims under § 1983 pleaded against employees of the same entity, the majority of district courts to have considered the issue have applied the doctrine to § 1983 claims).

The Supreme Court has held that deliberate indifference by prison officials to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). There is a subjective and an objective component to the deliberate indifference standard. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). To establish the objective component of an Eighth Amendment violation, the alleged deprivation of medical care must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The Second Circuit has identified several non-exhaustive factors relevant to the inquiry into the seriousness of a medical condition: "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citation and internal quotation marks omitted).

The Amended Complaint contends that Crenshaw's severe mental illness has led to prolonged periods of insomnia, suicidal ideation, and hospital visits. Am. Compl. ¶¶ 201, 203-04. These allegations satisfy the objective component of an Eighth Amendment claim. I therefore proceed to examine whether the Amended Complaint contains well-pleaded facts sufficient to support the inference that any individual defendant consciously ignored a serious risk to Crenshaw's wellbeing.

To satisfy the subjective component of the Eighth Amendment's deliberate indifference standard, a defendant must have been aware of a substantial risk that the incarcerated individual would suffer serious harm because of his or her actions or inactions. *See Salahuddin*, 467 F.3d at 280. Deliberate indifference is more than mere negligence—it is equivalent to "criminal recklessness," where an individual "disregards a risk of harm of which he is aware."

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In general, medical malpractice does not suffice for deliberate indifference. *Estelle*, 429 U.S. at 106; *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

Medical malpractice, may, however, rise to deliberate indifference if it "involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). "The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices." *Salahuddin*, 467 F.3d at 280. "Although *Farmer* requires that a plaintiff prove actual knowledge of a risk, evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) (citing *Farmer*, 511 U.S. at 842); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious.").

It is well established that "[a] prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011). A medical provider may, however, act with deliberate indifference by consciously providing an individual with "an easier and less efficacious" treatment plan, particularly if the provider does so because of ulterior motives, such as improper monetary incentive. *Chance*, 143 F.3d at 703-04 (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)).

"Deliberate indifference may also be inferred where treatment was cursory or evidenced apathy." *Bardo v. Wright*, No. 3:17-cv-1430 (JBA), 2019 WL 5864820, at *6 (D. Conn. Nov. 8, 2019) (citation and internal quotation marks omitted); *Hannah v. Chouhan*, No. 3:04-cv-314 (JBA), 2005 WL 2042074, at *4 (D. Conn. Aug. 24, 2005); *see also Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994) ("A jury could infer deliberate indifference from the fact that [defendant] knew the extent of [plaintiff's] pain, knew that the course of treatment was largely ineffective, and declined to do anything more to attempt to improve [plaintiff's] situation.").

### a.    Frappier and Brennan

Crenshaw contends that Frappier and Brennan acted with deliberate indifference by denying or rejecting his grievances. Am. Compl. ¶¶ 102, 111, 113, 124, 130, 134-35, 143-44, 148. "[D]eliberate indifference may be shown where prison officials erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates." *Barfield v. Semple*, No. 3:18-CV-1198 (MPS), 2019 WL 3680331, at *11 (D. Conn. Aug. 6, 2019) (citation and internal quotation marks omitted).

But Crenshaw's well-pleaded allegations, together with the exhibits he attaches to the Amended Complaint, do not support an inference that Frappier or Brennan oversaw an arbitrary or burdensome grievance review process. The exhibits instead show that Frappier and Brennan applied the DOC's requirement that incarcerated individuals attempt informal resolution before filing grievances. *See* ECF No. 11-1, at 271-75, 299-303, 327-31, 347-51, 363-73, 381-85, 391-93. In at least one instance, Brennan rejected Crenshaw's medical grievance but addressed his request, *id.* at 393, and she wrote him a letter to explain why his appeals were not processed, advised him about filing medical administrative remedies, offered

to answer further questions if needed, and provided him with a copy of Directive 8.9, *id.* at 399. Likewise, Frappier wrote Crenshaw a letter to explain why his Level 2 appeal was returned unprocessed. *Id.* at 417. Neither Crenshaw's allegations nor the exhibits attached to the Amended Complaint suggest that Brennan and Frappier acted with the requisite culpable state of mind to interfere with his mental health treatment as required for an Eighth Amendment violation.

Accordingly, any Eighth Amendment claims against Brennan and Frappier are dismissed as not plausible.

### b.    Dr. Yesu and Dr. Zuckerbraun

Crenshaw's claim against supervising psychologists Yesu and Zuckerbraun is rooted in two separate meetings where Crenshaw requested that he be assigned a different clinician because Crenshaw had seen his assigned provider, Stacy, engage in what Crenshaw viewed as unprofessional behavior in interacting with another incarcerated individual. Am. Compl. ¶¶ 109-18.

Defendants contend that Yesu and Zuckerbraun's failure to replace or investigate Crenshaw's designated clinician does not state an Eighth Amendment violation. Defs.' Mem. 25. I agree. It is well established that the Eighth Amendment does not guarantee an incarcerated individual their first-choice provider. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Robinson v. Butrisk*, No. 3:21-CV-50 (JAM), 2021 WL 1978703, at *5 (D. Conn. May 17, 2021) (stating that "the Constitution does not entitle a prisoner to a mental health counselor of his choice"); *Germano v. Cook*, No. 3:19-CV-1204 (JAM), 2020 WL 264763, at *10 (D. Conn. Jan. 17,

2020) (same). Thus, Crenshaw cannot recover on the theory that Yesu and Zuckerbraun violated his constitutional rights by refusing to investigate his complaints about Michelle or assign him to a new clinician. *Crispin v. Sussel*, No. 3:21-CV-885 (KAD), 2023 WL 22421, at *5 (D. Conn. Jan. 3, 2023) (prisoner failed to state constitutional claim arising from failure to investigate complaints brought in prison administrative grievances); *Zachs v. Barone*, No. 3:24-CV-171 (KAD), 2024 WL 2293158, at *4 (D. Conn. May 21, 2024) ("An inmate has no constitutional right to an administrative remedy or grievance program, to have his grievance properly processed or investigated, or to receive a response to a grievance he has filed.").

Nonetheless, I also understand Crenshaw's claim against Yesu and Zuckerbraun to encompass the allegation that they were aware of his ongoing difficulty receiving adequate mental health treatment. *See* Am. Compl. ¶¶ 109-10, 115 (describing meeting where Crenshaw spoke to Yesu to "express[] his concerns surrounding his mental health status and need for a com[petent] clinician"). Liberally construed, I find that this states a claim that Yesu and Zuckerbraun knew that Crenshaw was receiving inadequate treatment and nonetheless declined to take further action. This, together with Crenshaw's accusation stated throughout the Amended Complaint that DOC providers ignored or down-played his mental health needs because he was more difficult to treat than individuals with less-severe mental illness, is sufficient to state a claim of deliberate medical indifference.

I therefore deny Defendants' motion to dismiss Crenshaw's claims against Yesu and Zuckerbraun; as stated in this Opinion, Crenshaw may continue to discovery on his claim that Yesu and Zuckerbraun knew that he was receiving inadequate care and nonetheless declined to take further action.

c.       **Michelle**

Crenshaw states that Defendant Michelle—who was called to assist after he acted erratically—stated in his mental health record that he was "given time to discuss current stressor, non specific in nature." Am. Compl. ¶ 106. He complains that Michelle failed to provide the appropriate documentation of her interaction with him and intended to negatively affect analysis of his mental health by leaving out information about his mental health history of "depression and bi-polar, and concerns over perhaps being schizophrenic and hallucinating." *Id.* ¶¶ 106-07.

Crenshaw cannot recover on the basis of any disagreement with Michelle's medical judgment. *See Chance*, 143 F.3d at 703. But I also construe Crenshaw to raise the argument that Michelle failed to document critical information in his mental health record. Affording a liberal construction to the Amended Complaint, I find that Michelle's omission of significant mental health information could support an inference that Michelle deliberately ignored Crenshaw's health needs. Courts have held that inaccuracy of medical records, including omissions of significant information from medical records, can state a claim of deliberate medical indifference where the inaccuracy supports an inference of improper motive for declining care. *See Ruggiero v. Canfield*, No. 14-CV-307 (LF), 2017 WL 9485692, at *15 (W.D.N.Y. Mar. 23, 2017), *report and recommendation adopted*, 2017 WL 5152178 (W.D.N.Y. Nov. 7, 2017) (noting that discrepancies in the medical record could be construed as attempts to minimize the serious nature of plaintiff's lump, leading to denial of biopsy referral); *White v. Clement*, 116 F. Supp. 3d 183, 188-89 (W.D.N.Y. 2015) (concluding that failure to document the plaintiff's serious side effects to prescribed medication, such that

medication was not discontinued, could constitute deliberate indifference to serious medical need).[5]

I therefore deny Defendants' motion to dismiss Crenshaw's claim of deliberate medical difference by Michelle.

### d.    Dr. Wolf

Crenshaw contends that Dr. Wolf failed to afford him adequate mental health treatment after he arrived at Cheshire C.I. in January 2024. *See* Am. Comp. ¶¶ 161, 164, 169, 173-74, 176, 187, 190-93. Crenshaw expresses his dissatisfaction with Dr. Wolf's failure to provide timely responses to his inmate requests, to address a negative interaction he had with a mental health clinician who assessed his mental health incorrectly, to provide an adequate and timely his mental health evaluation and assessment for his single cell status, and to attend to his mental health needs during her visit to his solitary confinement unit. *Id.* Crenshaw says he suffered "decomposition" to his mental health (and, as a result, to his physical health) due to Dr. Wolf's conduct. *Id.* ¶¶ 198-99.

Liberally construed, the Amended Complaint supports the inference that Wolf ignored or deliberately delayed responding to Crenshaw's mental health needs (including his need for single cell status) after his transfer to Cheshire C.I. and that she ignored his mental health needs during his time in solitary confinement. Accordingly, Crenshaw may continue to proceed for

---

[5] Other courts have held that inaccurate reporting does not state an Eighth Amendment claim unless it supports the inference of a provider's deliberate indifference or improper motive. *See Porter v. Bunch*, No. 16-CV-5935 (KMK), 2019 WL 1428431, at *10 (S.D.N.Y. Mar. 29, 2019); *Bloomfield v. Wurzberger*, No. 9:08-CV-619 (GLS/RFT), 2009 WL 3335892, at *5 (N.D.N.Y. Oct. 15, 2009). To the extent that discovery reveals that Michelle is responsible only for omitting certain information from Crenshaw's records, Defendants may address the issue of whether this conduct supports an inference of deliberate indifference as part of any briefing in support of summary judgment.

damages on such Eighth Amendment deprivations against Dr. Wolf for further development of the record.

IV.    **<u>CONCLUSION</u>**

For the foregoing reasons, I grant in part and deny in part Defendants' Motion to Dismiss. As I have dismissed all claims pleaded against the Department of Correction, Frappier, and Brennan, the Clerk is respectfully directed to terminate these parties from the action.

Defendants shall file an Answer to the surviving claims of deliberate medical indifference on or before October 24, 2025. A scheduling order setting forth deadlines for discovery and the briefing of summary judgment motions will issue in due course.

<b>SO ORDERED.</b>

New Haven, Connecticut
September 25, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge